UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR 05-127 ML |
| | : | |
| PAUL NICKERSON, JR. | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant Paul Nickerson, Jr. ("Defendant"), is in violation of the terms of his supervised release and, if so, for a recommended disposition. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, hearings were conducted on November 9 and November 16, 2005. On November 16, Defendant, both personally and through counsel, waived a violation hearing and admitted that he had violated the terms of his supervised release. Based on that admission, I find that Defendant has violated supervised release. For the reasons stated herein, I recommend that Defendant be imprisoned for a term of nine (9) months with no further supervised release and that no interest accrue on the outstanding balance of Defendant's restitution while he is incarcerated.

**Background**

On April 21, 1997, Defendant appeared before the Honorable Terry R. Means, United States District Judge for the Northern District of Texas, after having pled guilty to bank robbery and was sentenced to ninety-two months incarceration to be followed by three years supervised release. Defendant was also ordered to pay $3,370.00 in restitution and a $100 special assessment. As

special conditions of supervised release, Defendant was ordered to: make payments of no less than $106.00 per month towards his restitution obligation; refrain from incurring new credit charges or opening additional lines of credit without the approval of the probation officer unless the probation officer made a determination that Defendant is in compliance with his payment schedule; provide the probation officer with all requested financial information; and participate in a substance abuse treatment program approved by the Probation Office for treatment of narcotic addiction or drug or alcohol dependency which includes testing for the detection of substance abuse and contribute to the costs of services (co-payment) in an amount to be determined by the probation officer, based on the ability to pay or availability of third party payment.

Defendant was released on August 11, 2003. Jurisdiction was transferred to the District of Rhode Island on October 14, 2003. On May 4, 2005, Defendant appeared before United States District Judge Mary M. Lisi for sentencing on violations of the following conditions of supervised release: Defendant shall refrain from any unlawful use of a controlled substance; Defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer; Defendant shall participate in an outpatient program approved by the Probation Office for substance abuse, which program may include testing to determine whether Defendant has reverted to the use of drugs or alcohol; and Defendant shall make payments of at least $106.00 per month towards his financial obligations to the court. Judge Lisi sentenced Defendant to a term of sixty days incarceration and thirty-four months supervised release. Additionally, Judge Lisi ordered the following special conditions: Defendant shall pay restitution in the amount of $1,738.00 at the rate of at least $60.00 per month; Defendant shall participate in and

satisfactorily complete an inpatient or outpatient program approved by the U.S. Probation Office for treatment of substance abuse which will include periodic testing (up to seventy-two drug tests per year) for the detection of substance use or abuse; Defendant shall refrain from incurring any new credit charges; and Defendant is not to open any new credit accounts without permission or prior approval of the U.S. Probation Office. Supervised release recommenced on May 19, 2005, with an expiration date of March 18, 2008.

**The Violation**

On November 7, 2005, U.S. Probation Officer Kathleen M. Hopkins ("U.S.P.O. Hopkins") filed a Petition for Warrant for Offender under Supervision (the "Petition"), alleging that Defendant had violated conditions of supervised release. The Supervised Release Violation Report dated November 1, 2005 (the "Report"), filed in connection with the Petition alleges that Defendant has violated the following conditions of supervision in the manner indicated:

**Condition #2: Defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month.**

Defendant failed to submit a monthly report for September 2005 which was due by October 5, 2005. As to this violation, the conditions of supervision were reviewed with Defendant on May 20, 2005, and he was instructed to submit a written monthly report within the first five days of each month

**Condition #3: Defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.**

On August 19, 2005, Defendant was verbally instructed to report to the Probation Office on August 23, 2005, and failed to do so. On September 9, 2005, Defendant was provided written

instructions to report in person to the Probation Office on September 13, 2005, and failed to do so. Defendant was provided on October 20, 2005, written instructions to report in person to the Probation Office on October 25,[1] 2005, and failed to do so.

As to this violation, as it pertains to the August 19, 2005, verbal instruction: on August 23, 2005, Defendant's girlfriend, Judy Seastrunk, left a message on U.S.P.O. Hopkins's voice mail that Defendant was at a job fair and that was why he did not report on this date. Further, the couple had only one vehicle, and Defendant had to make arrangements for his transportation. As to the September 9, 2005, written instruction: on September 13, 2005, the Probation Office received a call from Defendant's girlfriend who advised that Defendant was unable to report on this date as he was out helping someone with lawn work. Further, she could not reach him. As to the October 20, 2005, written instruction: Defendant contacted the Probation Office on October 24, 2005, and indicated that he could not report due to the fact that it was raining[2] on this date.

**Special Condition: Defendant shall pay restitution in the amount of $1,738.00 at the rate of at least $60.00 per month.**

Defendant has failed to make monthly restitution payments of $60.00 as ordered by the court since June 20, 2005. The principal balance is $1,580.00. The last payment Defendant made

---

[1] The date of Defendant's failure to report as stated in the Petition and the Violation Report is October 24, 2005. The date was amended to October 25, 2005, at the hearing.

[2] Defendant disputed the word "raining." He indicated that "stormy" more accurately described the weather. This and other disagreements by Defendant with certain details stated in the Report do not affect the court's finding that Defendant admitted to violating each of the conditions set forth in the Petition.

was on June 20, 2005, in the amount of $158.00.[3]

**Special Condition: Defendant shall participate in an outpatient program approved by the Probation Office for substance abuse, which program may include testing to determine whether Defendant has reverted to the use of drugs or alcohol.**

Defendant failed to attend substance abuse treatment as required on July 28, August 9, September 2, September 19, October 3, and October 17, 2005. Defendant failed to report to the Probation Office to submit urine screens as required for the Random Urinalysis Screening Program on June 20, July 18, August 24, September 7, and October 12, 2005.

As to this violation, Defendant repeatedly canceled substance abuse treatment appointments with Gateway Healthcare, Inc., in Warwick, Rhode Island. On July 28, 2005, he canceled stating he had no transportation. On August 9, 2005, and September 2, 2005, he failed to keep the scheduled appointments without explanation. Defendant's girlfriend on September 19, 2005, called Defendant's clinician and canceled the appointment for Defendant stating the couple had car trouble. On October 3, 2005, Defendant failed to keep his appointment and reported that it was due to the lack of bus transportation from his employment. On October 17, 2005, Defendant failed to keep the appointment without explanation. Due to his poor attendance record and non-compliance, he was discharged from Gateway Healthcare on October 24, 2005.

Defendant failed to report to the Probation Office to submit

---

[3] Defendant stated that he had recently made a "double payment." On November 23, 2005, U.S.P.O. Hopkins advised the court that Defendant made a payment of $60.00 which was received on November 9, 2005. According to the Probation Department, as of November 28, 2005, the outstanding balance on the principal of the restitution is $1,520.00 and the amount of interest owed is $1,220.63, for a total of $2,740.63.

urine screens on numerous occasions. On June 24, 2005, he was confronted by U.S.P.O. Hopkins regarding his failure to report for a urine screen on June 20, 2005, and he stated that he was not sure why he missed. On July 20, 2005, Defendant was questioned as to why he failed to report for a urine screen on July 18, 2005, and his response was "Oh, jeez." Defendant again failed to report on August 24, 2005. On August 28, 2005, the Probation Office attempted to complete a home visit to determine the reason for his missed screen. However, no one was at the residence. On September 7, 2005, Defendant failed to report for a urine screen. The Probation Office attempted to contact him telephonically on September 8, 2005, and the telephone had been disconnected. On October 13, 2005, the Probation Office attempted telephonically to contact Defendant regarding his failure to report for a urine screen on October 12, 2005. During a home visit on October 5, 2005, Defendant's girlfriend had provided U.S.P.O. Hopkins with a new cell phone number. When dialed on October 13, 2005, the phone message indicated that the subscriber was not taking calls at this time.

**Travel**

On November 7, 2005, Judge Lisi ordered the issuance of a warrant for Defendant to appear to answer to the Petition. The warrant was executed, and Defendant appeared before this Magistrate Judge on November 9, 2005. At that time Defendant initially indicated that he would waive a violation hearing and admit to the violations. However, when the court sought to confirm with Defendant the factual details of the alleged violations, Defendant appeared to express disagreement with some of them. Therefore, the court continued the hearing to November 16, 2005, to give defense counsel time to go over the Report in detail with Defendant as well as to obtain any documents which Defendant might have that were pertinent to the violation.

On November 16, 2005, Defendant again appeared before the court. At that time, his counsel indicated that Defendant wished to waive the violation hearing and admit to the violations. Defendant then waived a violation hearing and, both personally and through counsel, admitted to the violation.[4] This admission satisfied the court that there was an adequate basis for finding that Defendant had violated the conditions of supervision.

The court then received sentencing recommendations from the government and the defense. The government recommended ten months incarceration. It noted that this is the second time Defendant has violated supervised release and that he has been a problem for the Probation Department in that he simply will not comply with instructions. The government also recommended that there be no further supervised release because such supervision would not be a good utilization of the Probation Department's resources.

Defense counsel recommended a sentence of seven months, stating that Defendant had not used drugs and had always tested clean. Defense counsel joined in the recommendation that there be no further supervised release. He also requested that interest not accrue on the outstanding balance of restitution while Defendant is incarcerated.

Following those recommendations, Defendant was given the opportunity to speak on his own behalf. He declined to do so.

## Law

### Statutory Provisions

Section 3583(e)(2) of Title 18 of the United States Code ("U.S.C.") provides that if the court finds a defendant to be a violator of the conditions of supervised release, the court may extend the term of supervised release if less than the maximum

[4] See n. 2.

authorized term was previously imposed and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Fed. R. Crim. P. relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision. In this case, the maximum term of supervised release was previously imposed. Therefore, the term cannot be extended.

Pursuant to Section 3583(e)(3) of Title 18 of the U.S.C., the court may, after considering certain statutory factors set forth in § 3553(a), revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, if the court, pursuant to the Fed. R. Crim. P. applicable to revocation of supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release. However, a defendant whose term is revoked under this paragraph may not be required to serve more than two years in prison if the offense that resulted in the term of supervised release was a class C or D felony. Here the offense was a class C felony. Thus, the maximum period of imprisonment which may be imposed for the violation is two years. However, since Defendant has already served two months imprisonment as a result of one of more previous revocations, the statutory maximum term of imprisonment remaining is twenty-two months.

Section 3583(h) of Title 18 of the U.S.C. provides that when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3),

the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release (here three years), less any term of imprisonment that was imposed upon revocation of supervised release. See id.

**Sentencing Guidelines**

Section 7B1.1 of the United States Sentencing Guidelines ("U.S.S.G.") provides for three grades of violations. Section 7B1.1(a) of the U.S.S.G. states that a Grade A violation consists of (A) conduct which is punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or certain type of destructive device; or (B) any other offense punishable by a term of imprisonment exceeding twenty years. Conduct consisting of any other offense punishable by a term of imprisonment exceeding one year constitutes a Grade B violation. Conduct constituting an offense punishable by a term of imprisonment of one year or less, or violation of any other condition of supervision, is classified as a Grade C violation. Section 7B1.1(b) provides that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade. In this case, Defendant has committed a Grade C violation.

Pursuant to Section 7B1.3(a)(2) of the U.S.S.G., upon a finding of a Grade C violation, the court may revoke, extend, or modify supervision. Therefore, the court may revoke, extend, or modify the conditions of supervision in the instant case.

Should the court find that Defendant has committed a Grade B or C violation, §7B1.3(c)(1) states that where the minimum term

of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, the minimum term may be satisfied by (A) a sentence of imprisonment or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e) for any portion of the minimum term. Should the court find that Defendant has committed a Grade B or C violation, §7B1.3(c)(2) states that where the minimum term of imprisonment determined under §7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (A) a sentence of imprisonment; or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment. The second provision, which allows for alternatives for one-half of the minimum term, applies to this matter.

According to Section 7B1.3(d), any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under §7B1.4. In this case, there is an outstanding restitution obligation in the amount of $1,520.00 plus accrued interest.

Section 7B1.3(g)(2) of the U.S.S.G. provides that where supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the court may include a requirement that the defendant be placed on a term of supervised release upon release from imprisonment. The length of such term of supervised release

shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. See id. (citing 18 U.S.C. § 3583(h)). In this case, the authorized statutory maximum term of supervised release is three years. There has been a total of sixty days imprisonment previously imposed for violations of supervised release. Therefore, the court may impose the above-noted statutory maximum, minus the sixty days previously imposed, minus the term of imprisonment that is to be imposed for this revocation.

Pursuant to Section 7B1.4(a) of the U.S.S.G., the criminal history category is the category applicable at the time the defendant originally was sentenced to a term of supervision. In this instance, Defendant had a criminal history category of V at the time of sentencing. The Revocation Table contained in Section 7B1.4(a) of the U.S.S.G. provides that, for a Grade C violation with a criminal history category of V, an imprisonment range of seven to thirteen months is warranted.[5]

Section 7B1.5(b) of the U.S.S.G. states that, upon revocation of supervised release, no credit shall be given toward any term of imprisonment ordered for time previously served on post-release supervision.

**Discussion**

In making its recommendation, the court is influenced by the following factors. First, as noted by the government, this is Defendant's second violation of supervised release, a circumstance which weighs in favor of the government's

[5] The Court of Appeals for the First Circuit has held that Chapter 7 policy statements (including §7B1.4) are advisory rather than mandatory. See United States v. Ramirez-Rivera, 241 F.3d 37, 40 (1st Cir. 2001); United States v. O'Neil, 11 F.3d 292, 302 n.11 (1st Cir. 1993).

recommendation. Second, the court does not share defense counsel's confidence that Defendant has not been using illegal substances. The fact that Defendant repeatedly did not appear for urine screens when instructed to do so suggests that he was deliberately avoiding being tested until any illegal substances could no longer be detected. The court declines to give Defendant credit for remaining drug free when the evidence supporting that contention is open to question. Third, Defendant waived a hearing and admitted to the violations. Consistent with this Magistrate Judge's practice to make a slight reduction in the sentence to be recommended in such cases, I find that a reduction of one month from the ten month sentence recommended by the government is appropriate. Accordingly, I recommend that Defendant be sentenced to nine months imprisonment.

The court agrees with the government that imposition of a further term of supervised release would not be a good utilization of the Probation Department's resources. Therefore, I also recommend that there be no further period of supervised release after Defendant completes the term of imprisonment. Lastly, the court recommends that no interest accrue on outstanding balance of Defendant's restitution while he is serving his sentence.

**Conclusion**

After considering the various factors set forth in 18 U.S.C. § 3553(a) and for the reasons expressed above, I recommend that Defendant be imprisoned for a term of nine (9) months, that there be no further supervised release, and that no interest accrue on the outstanding balance of Defendant's restitution while he is incarcerated. Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); D.R.I. Local R. 32. Failure to file specific objections in a timely

manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

David L. Martin

DAVID L. MARTIN
United States Magistrate Judge
November 28, 2005